UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION



**FILED**

SEP 28 2016

CLERK

| | |
|---|---|
| RUTHER A. GESINGER,<br><br>     Plaintiff,<br><br>vs.<br><br>HONORABLE SYLVIA MATHEWS<br>BURWELL, SECRETARY OF DEPARTMENT<br>OF HEALTH AND HUMAN SERVICES, IN<br>HER OFFICIAL CAPACITY;<br><br>     Defendant. | CIV 15-1019<br><br><br>OPINION AND ORDER ON<br>DEFENDANT'S MOTION TO DISMISS<br>AND MOTION FOR SUMMARY<br>JUDGMENT |

## BACKGROUND

Plaintiff, Ruth Gesinger, began working as a registered nurse for the Indian Health

Service ("IHS") on February 10, 2010, in Eagle Butte, South Dakota. In July of 2010, plaintiff

experienced panic attacks and suffered a mental breakdown. Management at IHS noticed

plaintiff was in a depressive mood and advised her to seek treatment. Plaintiff was later treated

at an inpatient unit within IHS. Thereafter, plaintiff was referred to Manlove Psychiatric Clinic

in Rapid City, South Dakota, where she was diagnosed with Bipolar Type 2 Disorder,

depression, and anxiety. On April 1, 2011, plaintiff was fired. Plaintiff filed a complaint with

the Equal Employment Opportunity Commission, ("EEOC") claiming she was disabled and was

fired as a result of her disability.

On September 21, 2012, an administrative law judge for the EEOC, Judge Hamilton,

determined plaintiff had established disability discrimination in violation of the Rehabilitation

Act of 1973, 29 U.S.C. § 701 *et seq*. Judge Hamilton ordered the Department of Health and

Human Services ("Agency") to offer plaintiff reinstatement at IHS, or to some other mutually agreeable position or location, within 30 days. The order further directed defendant to give plaintiff a minimum of 30 days from receipt of the offer within which to accept or decline the offer. Defendant was given 60 days to determine and provide plaintiff back pay and benefits, including health insurance. Plaintiff was awarded $10,000.00 in punitive damages.

On October 31, 2012, ten days past defendant's deadline, plaintiff received a letter from defendant, informing it would comply with the terms of Judge Hamilton's order. Plaintiff accepted the Agency's offer within 30 days. Plaintiff was given notice on January 11, 2013, to return to work at IHS on January 14, 2013. Plaintiff started working at IHS as a registered nurse for the Emergency Department on January 14, 2013. On May 15, 2013, plaintiff asserted she was subjected to a hostile work environment and was constructively discharged. Pl.'s Compl., at ¶ 33. Plaintiff claims defendant intentionally discriminated and retaliated against her by:

(1) Failing to follow leave and on-call policies;
(2) Failing to consider extenuating circumstances, as required by defendant's employee handbook;
(3) Denying her requests for leave for medical appointments;
(4) Treating other similarly situated employees differently than plaintiff;
(5) Modifying plaintiff's SF50 Form;
(6) Failing to provide plaintiff with reasonable accommodations for her disability;
(7) Discrimination and retaliation for engaging in a protected activity; and
(8) Intentionally creating a hostile work environment.

Id., at ¶ 21.

On July 15, 2013, Pauline Bruce, the Director of Diversity Management for Indian Health Services, provided a declaration regarding the status of the Agency's implementation of Judge Hamilton's order. Bruce declared that she had reviewed all the elements of the ALJ's decision and the Final Agency Decision, and found that each element had been fully implemented.

2

Plaintiff filed a second administrative complaint with the EEOC on October 1, 2013, claiming she was discriminated and retaliated against based on her disability and prior EEOC activity.

On February 26, 2014, plaintiff attempted to bring a claim to this Court alleging the Agency violated her rights under the Americans with Disabilities Act ("ADA"). This Court ruled that plaintiff had specifically pleaded claims under the ADA, not the Rehabilitation Act, and, therefore, lacked subject matter jurisdiction. Gesinger v. Sebelius, Civ. No. 13-1004, Doc. 16, p. 4. This Court also found that plaintiff had failed to exhaust her administrative remedies to her claim of discrimination and retaliation in violation of the Rehabilitation Act. Id.

On March 19, 2014, the Agency issued its Final Administrative Decision on plaintiff's second administrative complaint, dismissing it on procedural grounds because she was simultaneously proceeding with the matter in district court. Plaintiff appealed the decision to the EEOC Office of Federal Operations and, on June 4, 2014, the Agency reversed its position and accepted plaintiff's second administrative complaint. On February 12, 2015, the Agency issued its Final Administrative Decision on plaintiff's second administrative complaint. The Agency found that plaintiff had not been discriminated or retaliated against based on her disability or protected activity.

Plaintiff filed a complaint with this Court on March 16, 2015, asserting the Agency discriminated against her under the ADA and retaliated and discriminated against her under the Rehabilitation Act. Defendant has filed a partial motion to dismiss and a motion in support of summary judgment.

## DECISION

### 1. Subject Matter Jurisdiction

"Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and statutes enacted by Congress pursuant thereto." Marine Equipment Management Co. v. U.S., 4 F.3d 643, 646 (8th Cir. 1993), (*citing* Bender v. Williams-Port Area School Dist., 475 U.S. 534, 541, *reh'g denied* 476 U.S. 1132 (1986)), (*citing in turn* Marbury v. Madison, 5 U.S. (1 Cranch) 137 2 L.Ed. 60 (1803)). "The threshold inquiry in every federal case is whether the court has jurisdiction," and the Eighth Circuit has "admonished district judges to be attentive to a satisfaction of jurisdictional requirements in all cases." Rock Island Millwork Co. v. Hedges-Gough Lumber Co., 337 F.2d 24, 26-27 (8th Cir. 1964); Sanders v. Clemco Industries, 823 F.2d 214, 216 (8th Cir. 1987).

Defendant asserts the Court lacks subject matter jurisdiction to hear a claim of discrimination under the ADA. Defendant has moved to dismiss pursuant to Fed. R. Civ. P. 12(h)(3) and under Fed. R. Civ. P. 12(b)(6). Fed. R. Civ. P. 12(h)(3) states: "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A Rule 12(h)(3) motion to dismiss is evaluated under the same standards as a motion to dismiss pursuant to Rule 12(b)(1). Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 879 n.3 (3rd Cir. 1992). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001) (citation omitted). Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "The burden of establishing that a cause of action lies within the jurisdiction of the federal courts is on the party asserting jurisdiction." Arkansas Blue Cross and Blue Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 816 (8th Cir. 2009). In this case, plaintiff has the burden of establishing that subject matter jurisdiction exists. It is not the responsibility of defendant to prove otherwise. Titus v. Sullivan, 4 F.3d 590, 593 n.1 (8th Cir. 1993).

The Court will address defendant's motion to dismiss under Fed. R. Civ. P. 12(h)(3) first because "if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." 5 C. Wright and A. Miller, Federal Practice and Procedure, § 1350, p. 548 (1969). cf. Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction).

The United States and its agents have not waived sovereign immunity to bring a discrimination claim under the ADA. "Sovereign immunity is jurisdictional in nature." FDIC v. Meyer, 510 U.S. 471, 475, (1994). To sue the United States or an agency of the United States, plaintiff must "show both waiver of sovereign immunity and a grant of subject matter jurisdiction." VS Ltd. Partnership v. Department of Housing and Urban Development, 235 F.3d 1109, 1112 (8th Cir. 2000). Plaintiff failed to address this issue in her memorandum. The provision of the ADA providing definitions for terms explains: "The term 'employer' does not include the United States, a corporation wholly owned by the government of the United States, or an Indian tribe." 42 U.S.C.A. § 12111 (West). Plaintiff, in her complaint, acknowledges that the "defendant is a federal agency . . ." Pl.'s Compl., ¶ 7. Therefore, this Court lacks subject matter jurisdiction to adjudicate plaintiff's claim of discrimination in violation of the ADA.

5

## 2. Exhaustion of Administrative Remedies

Defendant has filed a motion to dismiss all claims which stem from the period before plaintiff was reinstated on January 14, 2013, because plaintiff has failed to exhaust her administrative remedies. Defendant argues plaintiff could have appealed to the Merit Systems Protection Board ("MSPB") for a determination as to whether the Agency has complied with the terms of Judge Hamilton's order. Plaintiff argues she has exhausted her administrative remedies because the Agency issued its Final Agency Decision, which expressly acknowledges her right to file a civil action in federal district court.

Plaintiff has exhausted her administrative remedies in regard to her claims of discrimination and retaliation under the Rehabilitation Act. "Administrative remedies must be exhausted before a federal employee may bring an employment discrimination claim against a federal employer." McAlister v. Secretary of Dept. Health and Human Services, 900 F.2d 157, 158 (8th Cir. 1990) (*citing* Morgan v. United States Postal Service, 798 F.2d 1162 (8th Cir. 1986)). Plaintiff, in her second administrative complaint, asserted a discrimination and retaliation violation under the Rehabilitation Act. On February 12, 2015, the Agency issued its Final Agency Decision in response to plaintiff's second administrative complaint and found plaintiff was not discriminated or retaliated against based on her disability or protected activity. 29 C.F.R. § 1614.110(b) states:

> . . . The agency shall issue the final decision within 60 days of receiving notification that a complainant has requested an immediate decision from the agency, or within 60 days of the end of the 30-day period for the complainant to request a hearing or an immediate final decision where the complainant has not requested either a hearing or a decision. The final action shall contain notice of the right to appeal the final action to the Equal Employment Opportunity Commission, *the right to file a civil action in federal district court*, the name of the proper defendant in any such lawsuit

6

> and the applicable time limits for appeals and lawsuits. A copy of
> EEOC Form 573 shall be attached to the final action.

29 C.F.R. § 1614.110 (emphasis added). That is, the Agency was required by law to provide

notice to plaintiff of her right to file a civil action in federal district court. The Final Agency

Decision, in its notice to plaintiff, expressly states plaintiff's "right to file a civil action in an

appropriate United States District Court within thirty (30) calendar days of receipt of a Final

Agency Decision issued by an Agency on a complaint unless an appeal is filed with MSPB . . ."

Def.'s Ex. 1, p. 19. Furthermore, a factually similar case, *Farrell v. Principi*, 366 F.3d 1066,

1067 (9th Cir. 2004), involves a federal employee working for a Veterans Administration

Medical Center who claimed disability discrimination in violation of the Rehabilitation Act. The

court concluded:

> When an agency issues a notice of final action to a federal
> employee alleging employment discrimination, the claimant may
> seek *de novo* review of the disposition of his administrative
> complaint by filing a civil action in district court within 90 days."
> Although the claimant also has the option of appealing the final
> action to the EEOC before filing a civil action, *see* 29 C.F.R. §
> 1614.401(a), this is not required. The government contends that the
> civil action sought to enforce the final order and that [defendant]
> was therefore required to comply with the procedures in 29 C.F.R.
> § 1614.504. Compliance with the administrative procedures set
> forth in 29 C.F.R. § 1614.504 is, however, not required when the
> claimant seeks review of the disposition of his administrative
> complaint, rather than enforcement of a final action or settlement
> agreement. *See* 29 C.F.R. § 1614.504(a).

Id., at 1068. Plaintiff is seeking review of the disposition of her second administrative

complaint. While plaintiff may be alleging defendant failed to comply with the terms of Judge

Hamilton's order in support of her claims of discrimination and retaliation, plaintiff is bringing a

claim to this Court to determine whether there were violations under the Rehabilitation Act.

7

Therefore, plaintiff is allowed to seek *de novo* review of the disposition of her administrative complaint by filing a civil action in district court. Id.

### 3. Defendant's Motion for Summary Judgment on Discrimination Claim

Defendant has moved for summary judgment on plaintiff's claim of discrimination in violation of the Rehabilitation Act. Plaintiff argues, "summary judgments [sic] should seldom be used in cases alleging employment discrimination." Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J., p. 24 (*citing* Haglof v. Northwest Rehabilitation, Inc., 910 F.2d 492, 495 (8th Cir. 1990)). Plaintiff misstates the law in this regard. *Haglof* was abrogated by *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011), where the Court concluded: "There is no 'discrimination case exception' to the application of summary judgment . . . [b]ecause summary judgment is not disfavored and is designed for every action . . ." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (*citing* Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1118 (8th Cir. 2006)).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences from that evidence in favor of the nonmoving party. Smith v. URS Corp., 803 F.3d 964, 968 (8th Cir. 2015) (*citing* Moody v. Vozel, 771 F.3d 1093, 1096 (8th Cir. 2014)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 206 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole

8

could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. (*quoting* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

The Rehabilitation Act provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability . . . be subjected to discrimination" 29 U.S.C. § 794(a). "In 1978, the Rehabilitation Act was amended to provide private causes of action to persons subjected to handicap discrimination by the federal government and its agencies." Gardner v. Morris, 752 F.2d 1271, 1277 (8th Cir. 1985). Under the language of the Rehabilitation Act, plaintiff needs to show she was "disabled," was "otherwise qualified," and was the victim of "discrimination" solely because of her disability. Peebles v. Potter, 354 F.3d 761, 765 (8th Cir. 2004). There is no dispute that plaintiff is disabled and was otherwise qualified to perform her job. Unlike the ADA, the definition of "discrimination" is not codified in the Rehabilitation Act. *See* U.S.C. § 12112(b) (defining discrimination). "However, § 794(d) of the Rehabilitation Act, added in 1992, adopts the standards applied under the ADA to determine whether a violation of the former has occurred." Peebles v. Potter, 354 F.3d 761, 765 (8th Cir. 2004). "Although the ADA has no federal funding requirement, 'it is otherwise similar in substance to the Rehabilitation Act, and cases interpreting either are applicable and interchangeable.'" Wojewski v. Rapid City Reg'l Hosp., Inc., 450 F.3d 338, 344 (8th Cir. 2006). Therefore, the Court will utilize the ADA when necessary to determine whether defendant is entitled to summary judgment regarding plaintiff's discrimination and retaliation claim under the Rehabilitation Act.

Under the Rehabilitation Act, the ADA, and the EEOC regulations, numerous kinds of discrimination may exist. Peebles v. Potter, 354 F.3d 761, 765 (8th Cir. 2004). Two forms of

9

discrimination are at issue in this case: disparate treatment and failure to make reasonable accommodations. "Depending on which kind of discrimination is at issue, different burden-shifting analyses are applied." Id., at 776 (*citing* Fenney v. Dakota, Minnesota & E. R.R. Co., 327 F.3d 707, 711-13 (8th Cir. 2003)).

## a. Discrimination as a Result of Disparate Treatment

"In disparate treatment cases, a similarly situated disabled individual is treated differently because of [her] disability than less- or non-disabled individuals." Id. "The key element is discriminatory intent." Id. (*see* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). Plaintiff can survive defendant's motion for summary judgment on her disability discrimination claim as a result of disparate treatment by either: (1) presenting proof of direct evidence of discrimination; or (2) creating the requisite inference of unlawful discrimination under the burden-shifting framework established in *McDonnel Douglas*. Jenkins v. Med. Labs. of E. Iowa, Inc., 880 F. Supp. 2d 946, 957 (N.D. Iowa 2012), aff'd, 505 F. App'x 610 (8th Cir. 2013). In *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004), The United States Court of Appeals for the Eighth Circuit explained the burden-shifting framework when it stated:

> We have long recognized and followed this principle in applying *McDonnell Douglas* by holding that a plaintiff may survive the defendant's motion for summary judgment in one of two ways. The first is by proof of 'direct evidence' of discrimination. Direct evidence in this context is not the converse of circumstantial evidence, as many seem to assume. Rather, direct evidence is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action. Thus, 'direct' refers to the causal strength of the proof, not whether it is 'circumstantial' evidence. A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnel Douglas*

10

> analysis to get to the jury, regardless of whether his strong
> evidence is circumstantial. But if the plaintiff lacks evidence that
> clearly points to the presence of an illegal motive, he must avoid
> summary judgment by creating the requisite inference of unlawful
> discrimination through the *McDonnell Douglas* analysis, including
> sufficient evidence of pretext.

After review of the record, the Court finds plaintiff has not presented proof of direct evidence "to

support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the

adverse employment action." Id. Therefore, plaintiff must create the requisite inference of

unlawful discrimination under the burden-shifting framework of *McDonnel Douglas*.

The burden-shifting framework of *McDonnel Douglas* requires a plaintiff with no direct

evidence of discrimination to establish and prove by a preponderance of the evidence a *prima*

*facie* case of employment discrimination. McDonnel Douglas Corp. v. Green, 411 U.S. 792

(1973). To establish a *prima facie* case of disability discrimination, a plaintiff must show:

1. She has a disability within the meaning of the ADA;
2. She is qualified to perform the essential functions of the job, with
   or without reasonable accommodation; and
3. That she suffered an adverse employment action due to a
   disability.

*See* Tusing v. Des Moines Independent Comm. School Dist., 639 F.3d 507, 518 (8th Cir. 2011)

(*citing* Chalfant v. Titan Distrib., Inc., 475 F.3d 982, 988 (8th Cir. 2007)). If plaintiff establishes

a *prima facie* case, the burden then shifts to defendant to "articulate a nondiscriminatory

reason—a legitimate rationale—for its contested actions." Smith v. URS Corp., 803 F.3d 964,

968 (8th Cir. 2015) (*quoting* Torgerson v. City of Rochester, 643 F.3d 1031, 1046 (8th Cir.

2011)). If defendant is able to meet its burden, plaintiff must then "produce evidence sufficient

to create a genuine issue of material fact regarding whether [defendant's] proffered

nondiscriminatory justifications are mere pretext for intentional discrimination." Id. (*quoting*

Pope v. ESA Servs., Inc., 406 F.3d 1001, 1007 (8th Cir. 2005)). "The burden to prove pretext

11

'merges with the ultimate burden of persuading the court that [plaintiff] was the victim of intentional discrimination.'" Id. (*quoting* Tex. Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

Defendant concedes, for purposes of summary judgment only, "the first two elements of plaintiff's disability claim are not in dispute." Def.'s Mem. in Supp. of Mot. for Summ. J., p. 23. The Agency further acknowledges for purposes of summary judgment that plaintiff's allegations of constructive discharge, if found to be true, could be considered an adverse employment action. Id. (*citing* Fenney v. Dakota, Minn. & E.R. Co., 327 F.3d 707, 7171 (8th Cir. 2003)).

Plaintiff claims she was constructively discharged and subjected to a hostile work environment. "Hostile work environment and constructive discharge claims may be wholly distinct causes of action under Title VII." Wilkie v. Dep't of Health & Human Servs., 638 F.3d 944, 954 (8th Cir. 2011) (*quoting* Winspear v. Cmty. Dev., Inc., 574 F.3d 604, 607 (8th Cir. 2009)). "The claims have different elements, and while a hostile work environment can form the basis for a constructive discharge allegation, hostile work environment discrimination can exist absent a tangible employment action." Id. Therefore, the Court will analyze plaintiff's claims of hostile work environment and constructive discharge separately.

### i. Hostile Work Environment

To establish a hostile work environment in violation of the Rehabilitation Act, a plaintiff must show:

> (1) That she is a member of the class of people protected by the statute;
> (2) That she was subject to unwelcome harassment;
> (3) That the harassment resulted from her membership in the protected class; and
> (4) That the harassment was severe enough to affect the terms, conditions, or privileges of her employment.

12

Schwarzkopf v. Brunswick Corp., 833 F. Supp. 2d 1106, 1117 (D. Minn. 2011) (*quoting* Shaver v. Indep. Stave Co., 350 F.3d 716, 720 (8th Cir. 2003)). "In attempting to determine whether challenged conduct crosses the line separating unpleasantness from harassment, courts must consider the totality of the circumstances, including frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it reasonably interferes with the employee's performance." Id. "It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period." Id. (*see* Baker v. John Morrell & Co., 382 F.3d 816, 828-29 (8th Cir. 2004)). "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id. "The plaintiff's burden at the *prima facie* stage is not great; the plaintiff is required to present facts capable of supporting an inference of discrimination." Smith v. URS Corp., 803 F.3d 964, 970 (8th Cir. 2015) (*citing* Torgerson, 643 F.3d at 1047). "In attempting to present facts that would support such an inference, the test for whether employees are similarly situated is strict; the employees must be 'similarly situated in all material respects.'" Id. (*quoting* Torgerson, 643 F.3d at 1051).

· Plaintiff has established sufficient evidence to draw a reasonable inference that she was subjected to a hostile work environment. The record in the light most favorable to the plaintiff indicates defendant denied plaintiff access to the medication storage area and other areas of the IHS facility. Based on the declaration of plaintiff, she was not given the codes to the medication room, the supply room, or other places medication was stored. Pl.'s Mem. in Resp. to Def's Mot. for Summ. J., p.14. Plaintiff asserts that her denial of access affected her ability to perform her duties as a nurse. Id. Plaintiff further alleges that doctors questioned why she didn't have

13

access and would seek other nurses to give medications to plaintiff's assigned patients. Id. Plaintiff believes her lack of access to many areas of the hospital led to distrust among doctors and coworkers, and the reason for not granting access was because of her mental disability. Id.

The parties agree plaintiff is disabled, fulfilling the first element. Plaintiff asserts in her declarations she was subjected to numerous instances of harassment. Plaintiff had access to the medication and supply room before defendant learned she was diagnosed with bipolar disorder, depression, and anxiety. All other nurses were allowed access to these rooms holding medication. Not allowing plaintiff access to the medication storage room after learning plaintiff was diagnosed with bipolar disorder creates a reasonable inference that plaintiff was subjected to unwelcome harassment when observing the facts in the most favorable light. Defendant fails to address the issue of plaintiff's access to the medication supply rooms in its memorandum. There is an inference that the conduct of the defendant was motivated by plaintiff's disability because she was previously allowed access to the medication room and, when defendant and its supervisors became aware of plaintiff's condition, she was denied access. Finally, plaintiff has established an inference that the harassment led to affecting the privileges of employment because all other nurses were allowed access to the medication room. Plaintiff presents many claimed instances of harassment so that a trier of fact may reasonably find plaintiff was discriminated against based on the frequency and the totality of the circumstances. However, this is an instance in particular where such harassment may have affected the privileges of her employment. Therefore, when viewing the facts and inferences in the light most favorable to plaintiff, Ms. Gesinger has met her burden of creating an issue that she was subjected to a hostile work environment.

14

### ii. Constructive Discharge

The next question is whether plaintiff was constructively discharged as a result of discrimination. "To constitute a constructive discharge, the employer must deliberately create intolerable working conditions with the intention of forcing the employee to quit and the employee must quit." Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 494 (8th Cir. 1996). "A constructive discharge arises only when a reasonable person would find the conditions of employment intolerable." Id. "To act reasonably, an employee has an obligation not to assume the worst and jump to conclusions too quickly." Id. (*see* West v. Marion Merrell Dow, Inc., 54 F.3d 493, 498 (8th Cir. 1995)). "An employee who quits without giving [her] employer a reasonable chance to work out a problem has not been constructively discharged." Id. Plaintiff wrote an e-mail on May 2, 2013, informing IHS she is requesting paid leave until it fully complies with Judge Hamilton's order. Plaintiff explains in the e-mail that she is requesting leave due to her health insurance coverage being dropped and her AWOL status not being expunged. After May 2, 2013, plaintiff never appeared for work. On June 13, 2013, plaintiff officially resigned. The Court finds plaintiff should not have jumped to conclusions too quickly and fail to inform the defendant of the long list of issues she had with the working environment at IHS. Defendant could not address plaintiff's issues if she did not give adequate notice of such problems. Moreover, plaintiff should not have demanded paid leave on May 2, 2013. Instead, she should have informed defendant of her issues and continued working. Plaintiff did not act reasonably in this regard. Therefore, plaintiff was not constructively discharged.

While plaintiff has failed to establish a *prima facie* case for constructive discharge, plaintiff has met her burden of proving an adverse employment action by establishing a *prima*

15

*facie* case of being subjected to a hostile work environment. Again, constructive discharge and hostile work environment are "wholly distinct causes of action under Title VII." Wilkie v. Dep't of Health & Human Servs., 638 F.3d 944, 954 (8th Cir. 2011) (*quoting* Winspear v. Cmty. Dev., Inc., 574 F.3d 604, 607 (8th Cir. 2009)). Plaintiff has established all of the elements to form a *prima facie* case of discrimination. The burden then shifts to defendant to "articulate a nondiscriminatory reason—a legitimate rationale—for its contested actions." Smith v. URS Corp., 803 F.3d 964, 968 (8th Cir. 2015) (*quoting* Torgerson v. City of Rochester, 643 F.3d 1031, 1046 (8th Cir. 2011)). Defendant, in its briefs, failed to articulate a nondiscriminatory reason for denying plaintiff access to rooms of the hospital when the other nurses on staff had access. Defendant has failed to meet its burden of establishing a legitimate rationale for its contested actions. As such, the issue of pretext is now moot. Therefore, plaintiff has established a *prima facie* case of discrimination as a result of disparate treatment.

### b. Discrimination as a Result of Failure to Provide Reasonable Accommodations

"Reasonable accommodation claims are not evaluated under the *McDonnell Douglas* burden-shifting analysis." Peebles v. Potter, 354 F.3d 761, 766 (8th Cir. 2004). "Rather, 'a modified burden-shifting analysis' is applied." Id. (*quoting* Fenney, 327 F.3d, at 712). "This is so because a claim against an employer for failing to reasonably accommodate a disabled employee does not turn on the employer's intent or actual motive." Id. "The *McDonnell Douglas* line of cases, however, is aimed at fleshing out this 'elusive factual question of intentional discrimination.'" Id. (*quoting* Burdine, 450 U.S. 248); *accord* Reeves, 530 U.S., at 141, 120 S.Ct. 2097 (stating that "when a plaintiff alleges disparate treatment, liability depends on whether the protected trait . . . actually motivated the employer's decision;" thus, *McDonnell Douglas* is utilized to alleviate the burden of dealing with this "sensitive and difficult question

16

that is seldom subject to direct evidence"); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506,

113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "In a reasonable accommodation case, the

'discrimination' is framed in terms of the failure to fulfill an affirmative duty—the failure to

reasonably accommodate the disabled individual's limitations." Id. "The Act compels

employers to modify their work requirements to enable disabled individuals to have the same

opportunities as their non-disabled counterparts." Id.; Kiel v. Select Artificials, Inc., 169 F.3d

1131, 1136 (8th Cir. 1999). "As such, it is not the employer's discriminatory intent in taking

adverse employment action against a disabled individual that matters." Id. "Rather,

discrimination occurs when the employer fails to abide by a legally imposed duty." Id. "The

known disability triggers the duty to reasonably accommodate and, if the employer fails to fulfill

that duty, we do not care if he was motivated by the disability." Id. (*see* Mole v. Buckhorn

Rubber Prods. Inc., 165 F.3d 1212, 1219-20 (8th Cir. 1999) (Lay, J. dissenting)). Plaintiff's

burden to survive summary judgment is whether "the requested accommodation is 'reasonable

on its face,' i.e., ordinarily or in the run of cases." Id. (quoting U.S. Airways, Inc. v. Bennnett,

535 U.S. 391, 401, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002)). Upon such a showing, the

employer is left to "show special (typically case-specific) circumstances that demonstrate undue

hardship in the particular circumstance." Id. Therefore, this Court will utilize the modified

burden-shifting test to determine whether defendant is entitled to summary judgment to

plaintiff's claim of discrimination based on failure to reasonably accommodate plaintiff's

disability.

Defendant acknowledges its supervisors were aware of plaintiff's disability, triggering an

affirmative duty to reasonably accommodate. Mem. in Supp. Of Def.'s Mot. For Summ. J., p.

17

23. Next, plaintiff must show reasonableness in her request for accommodations. The Eighth

Circuit has stated:

> Other courts have held—usually in the context of mental
> disabilities—that the absence of an express and unequivocal
> request is not necessarily fatal to a failure-to-accommodate claim.
> For example, in *Taylor v. Phoenixville School District*, 174 F.3d
> 142 (3rd Cir. 1999), the Third Circuit stated, "The EEOC's manual
> makes clear . . . that while the notice does not have to be in
> writing, be made by the employee, or formally invoke the magic
> words ' reasonable accommodation,' the notice nonetheless must
> make clear that the employee wants assistance for his or her
> disability. In other words, the employer must know of both the
> disability and the employee's desire for accommodations for that
> disability.  The Third Circuit continued, "what matters . . . are not
> formalisms about the manner of the request, but whether the
> employee or a representative for the employee provides the
> employer with enough information that, under the circumstances,
> the employer can be fairly said to know of both the disability and
> desire for an accommodation.

Ballard v. Rubin, 284 F.3d 957, 961 (8th Cir. 2002).  The scope of the employer's obligation in

this regard is determined through an informal, interactive process between the employer and the

employee, identifying the limitations arising from the disability and potential reasonable

accommodations that could overcome those limitations.  "To show that an employer failed to

participate in this interactive process, the employee must demonstrate that: (1) the employer

knew about the employee's disability; (2) the employee requested accommodations or assistance

for his or her disability; (3) the employer did not make a good faith effort to assist the employee

in seeking accommodations; and (4) the employee could have been reasonably accommodated

but for the employer's lack of good faith."  Id. (*quoting* Taylor v. Phoenixville Sch. Dist., 174

F.3d 142, 165 (3rd Cir. 1999)).

Plaintiff contends defendant failed to reasonably accommodate her by having her work

twelve-hour night shifts.  Defendant argues the regular schedule in the Emergency Room is to

work six weeks of twelve-hour day shifts, then work six weeks of twelve-hour night shifts. Def.'s Mot. in Supp. of Summ. J., p. 8. Plaintiff states in her declaration that Dr. Manlove recommended that she work day shifts. Pl.'s Decl., ¶ 14. Plaintiff's Exhibit 26 corroborates plaintiff's declaration, where Dr. Manlove indicates in his medical records that plaintiff's mood stability is improved when she works a day shift.

The Court must now analyze whether defendant's request to only work the day shift is reasonable on its face, or in the run of cases. In *Rehrs v. Iams Co.*, 486 F.3d 353, 354-5 (8th Cir. 2007), plaintiff suffered from diabetes and his employer implemented a rotating-shift schedule where employees would alternate day and night shifts every two weeks. Plaintiff's doctor believed a routine or fixed schedule would enhance the efforts to control his blood sugar. Id. The court found that "[a]llowing [plaintiff] to work a straight day-shift schedule would have placed a heavier or unfavorable burden on other technicians at the facility." Id. "Under the ADA, an accommodation that would cause other employees to work harder, longer, or be deprived of opportunities is not mandated." Id. (*quoting* Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1094 (5th Cir. 1996)). The parties agree that defendant declined plaintiff's request because it would be unfair and burdensome to the other nurses on staff. After review of the case law on this issue, plaintiff has not met her burden of showing that her request for accommodation was reasonable on its face, or in the run of cases. Therefore, defendant is entitled to summary judgment on this issue.

Next, plaintiff claims she requested to work eight-hour shifts instead of twelve-hour shifts and was denied. Defendant denied the request for the same reason it denied the request to only work day shifts: it would be unfair and burdensome to the other nurses on staff. As stated above, defendant initially has the burden to prove that such request is reasonable on its face, or in

19

the run of cases. Because working only an eight-hour shift would lead to other nurses on staff to work harder or longer, plaintiff has not met her burden of establishing that her request for accommodation was reasonable on its face. Therefore, defendant is entitled to summary judgment on this issue.

Plaintiff also claims she requested to work at the outpatient clinic of IHS, which only requires eight-hour shifts. The parties agree there was no open position at the outpatient clinic at the time of plaintiff's request. Plaintiff must meet her burden of showing whether her request for accommodation was reasonable on its face. "Reassignment to a vacant position" is another possible accommodation under the ADA." Benson v. Nw. Airlines, Inc., 62 F.3d 1108, 1114 (8th Cir. 1995). "[Defendant] is not required to create a permanent position as an accommodation . . ." Id. Plaintiff explains in her declaration to be transferred to the outpatient clinic in IHS, nurses must submit a request, and requests to transfer are accepted based on a seniority system. The Eighth Circuit has held that, "in the context of a Title VII religious discrimination case, an employer need not adapt to an employee's special worship schedule as a 'reasonable accommodation' where doing so would conflict with the seniority rights of other employees." U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 403, 122 S. Ct. 1516, 1524, 152 L. Ed. 2d 589 (2002) (*citing* Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 79-80, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977)). Plaintiff's request is not reasonable on its face for two reasons: (1) there was no vacant position at the outpatient clinic; and (2) transferring her to the outpatient clinic would conflict with the seniority rights of the other employees. Therefore, defendant is entitled to summary judgment on this issue.

## 4. Defendant's Motion for Summary Judgment on Retaliation Claim

To establish a *prima facie* case of discrimination in the context of

retaliation, plaintiff must show:

> (1) She is a member of a protected group because of her
>     participation in a protected activity;
> (2) Agency officials knew of plaintiff's participation in the
>     protected activity prior to the employment action at issue;
> (3) She was subsequently subjected to adverse treatment; and
> (4) The adverse employment action followed the protected activity
>     within such a period of time that retaliatory motivation may be
>     inferred.

*See* Robinson v. Shell Oil Co., 591 U.S. 337, 117 S.Ct. 843 (1997). In order to make a

retaliation claim, a plaintiff must again establish " direct evidence of discrimination or create an

inference of it under the *McDonnel Douglas* burden-shifting framework." Young-Losee v.

Graphic Packaging Intern, Inc., 631 F.3d 909, 912 (8th Cir. 2011) (*citing* Gallagher v. Magner,

619 F.3d 823, 831 (8th Cir. 2011)). To establish a *prima facie* case, the record must generally

show that the Agency took actions from which it can be inferred that, more than likely, such

actions were based on discriminatory intentions. McDonnell Douglas Corp., supra, at 802. Once

the record establishes a *prima facie* case of discrimination or retaliation, the burden of proof

shifts to the Agency to set forth legitimate, non-discriminatory reasons for its actions. Id. If

defendant is able to meet its burden, plaintiff must then "produce evidence sufficient to create a

genuine issue of material fact regarding whether [defendant's] proffered nondiscriminatory

justifications are mere pretext for intentional discrimination." Id.

Plaintiff claims she was subjected to two adverse employment actions: (1) constructive

discharge and (2) hostile work environment. "Hostile work environment and constructive

discharge claims may be wholly distinct causes of action under Title VII." Wilkie, supra at 954.

"The claims have different elements, and while a hostile work environment can form the basis

for a constructive discharge allegation, hostile work environment discrimination can exist absent

21

a tangible employment action." Id. Therefore, the Court will analyze plaintiff's claims of hostile

work environment and constructive discharge separately.

### i. Hostile Work Environment

As stated above, to establish a hostile work environment in violation of the Rehabilitation

Act, a plaintiff must show:

> (1) That he is a member of the class of people protected by the
>     statute;
> (2) That he was subject to unwelcome harassment;
> (3) That the harassment resulted from his membership in the
>     protected class; and
> (4) That the harassment was severe enough to affect the terms,
>     conditions, or privileges of his employment.

Schwarzkopf v. Brunswick Corp., 833 F. Supp. 2d 1106, 1117 (D. Minn. 2011) (*quoting* Shaver

v. Indep. Stave Co., 350 F.3d 716, 720 (8th Cir. 2003)). Defendant agrees that plaintiff meets

the first element of her retaliation claim because her EEOC claim filed in June 2011 qualifies as

a protected activity. Def.'s Mem. in Supp. of Mot. for Summ. J., p. 27. Plaintiff, in her

declaration, asserts she was retaliated against because defendant did not follow the terms and

conditions provided in Judge Hamilton's order. Plaintiff's main issue in regard to defendant's

noncompliance with Judge Hamilton's order was its failure to reinstate her with health insurance

for herself and her children. There is a dispute of fact amongst the parties whether plaintiff

executed the proper paperwork for health insurance. Pl.'s Ex. 30. A trier of fact could find this

as harassment in retaliation of engaging in a protected activity and that such harassment was

severe enough to affect the terms and conditions of her employment. Furthermore, there is an

inference that plaintiff was disparately treated when she was denied access to rooms storing

medication for patients. As stated above, all other nurses on staff were given the privilege to

access these rooms of the hospital. When viewing the facts and reasonable inferences in the light

22

most favorable to plaintiff, a jury could find that plaintiff was subjected to unwelcome harassment, that the harassment resulted from her engaging in protected activity, and that the harassment affected the terms, conditions, and privileges of her employment. Therefore, plaintiff has established on a *prima facie* basis that she was subjected to a hostile work environment based on retaliation of a protected activity.

## ii. Constructive Discharge

Next, the Court will examine whether plaintiff was constructively discharged. "Constructive discharge, like any other discharge, is an adverse employment action that will support an action for unlawful retaliation." West v. Marion Merrell Dow, Inc., 54 F.3d 493, 497 (8th Cir. 1995). "An employee is constructively discharged 'when an employer deliberately renders the employee's working conditions intolerable and thus forces her to quit her job.'" Id. (*quoting* Smith v. World Ins. Co., 38 F.3d 1456, 1460 (8th Cir. 1994)). "The standard is an objective one." Id. "An employee may not be unreasonably sensitive to her working environment." Id. (*quoting* Johnson v. Bunny Bread Co., 646 F.2d 1250, 1256 (8th Cir. 1981)). "A constructive discharge arises only when a reasonable person would find her working conditions intolerable." Id. "Part of an employee's obligation to be reasonable is an obligation not to assume the worst and not to jump to conclusions too fast." Id. (*quoting* Smith v. Goodyear, 895 F.2d at 473)). "An employee who quits without giving her employer a reasonable chance to work out a problem is not constructively discharged." Id. In plaintiff's e-mail sent on May 2, 2013, she assumed the worst and jumped to certain conclusions. The Court finds that the plaintiff effectively resigned on June 13, 2013, without giving defendant a chance to work out the problems she was experiencing. Plaintiff should have continued employment and worked together with defendant to be in full compliance with Judge Hamilton's order. Because of

23

plaintiff's hasty decision to discontinue working until her issues were resolved, she was not constructively discharged because she did not act reasonably when she resigned. Therefore, plaintiff was not constructively discharged.

Because constructive discharge and hostile work environment are "wholly distinct causes of action under Title VII," plaintiff has established she was subjected to an adverse employment action by showing plaintiff was subjected to a hostile work environment. Wilkie, supra at 954. The Court must now analyze whether "the adverse employment action followed the protected activity within such a period of time that retaliatory motivation may be inferred." Robinson v. Shell Oil Co., 591 U.S. 337, 117 S.Ct. 843 (1997). "An employee may prove causation with circumstantial evidence that justifies an inference of a retaliatory motive." Wedow v. City of Kansas City, Mo., 442 F.3d 661, 675 (8th Cir. 2006) (quoting Pope v. ESA Serv., Inc., 406 F.3d 1001, 1010 (8th Cir. 2005)). "Temporal proximity rises in significance the closer the adverse activity occurs to the protected activity." Id. Plaintiff has asserted throughout her declaration that defendant failed to comply with Judge Hamilton's order by failing to abide by the time constraints in which to offer plaintiff her position, unreasonably delaying her reinstatement, and treating her differently than similarly situated employees. Along with her harassment in not being granted access to areas where medication was stored, plaintiff has established an inference that the adverse employment action followed the protected activity within such a period of time that retaliatory motivation may be inferred. Therefore, defendant is not entitled to summary judgment on plaintiff's claim of retaliation under the Rehabilitation Act.

## ORDER

Now, therefore,

IT IS ORDERED:

1. Defendant's motion, Doc. 19, to dismiss plaintiff's claim of discrimination under the Americans with Disabilities Act is granted.

2. Defendant's motion, Doc. 19, for summary judgment on plaintiff's claim of discrimination under the Rehabilitation Act is denied.

3. Defendant's motion, Doc. 19, for summary judgment on plaintiff's claim of retaliation under the Rehabilitation Act is denied.

DATED this 28th day of September, 2016.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

25